UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


LOUIS WILBERT BOYD, JR.                          CIVIL ACTION

VERSUS                                           NO.  09-7508

KELLY LASHER ET AL.                              SECTION "R" (2)


**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff, Louis Wilbert Boyd, Jr., is a pretrial detainee currently incarcerated in the Nelson Coleman Correctional Center in Killona, Louisiana.  He is awaiting trial in this court on various charges asserted against him in an indictment returned on March 5, 2009.  <u>United States v. Boyd</u>, Crim. No. 09-63 "R"(5).  The pending charges include cocaine possession and distribution, felon in possession of a firearm, and possession of firearms in furtherance of drug trafficking.  His criminal trial is currently set to occur in this court on April 26, 2010.  <u>Id.</u> at Record Doc. Nos. 46, 49.

In the captioned civil case, filed pro se and in forma pauperis on a form used by prisoners to assert complaints in this district pursuant to 42 U.S.C. § 1983, Boyd alleges that he was provided with inadequate medical care for cancer. Although the caption of his complaint identifies six (6) named defendants and two (2) unidentified "Doe" defendants, the only allegations made in this complaint are against defendant United

States Marshal's Deputy Kelly Lasher. No allegations of any kind are made in this complaint against any other named defendant.

Within one week of the date on which Boyd filed the above-captioned civil lawsuit, he filed seven (7) other civil complaints pursuant to Section 1983. In all seven (7) suits, he named the same multiple defendants. Those suits are C.A. Nos. 09-7639 "I"(3), 09-7641 "I"(2), 09-7642 "J"(2), 09-7643 "A"(1), 09-7645 "C"(5), 09-7646 "I"(2) and 09-7647 "I"(5). It is clear from a review of the eight (8) complaints filed by Boyd in December 2009, however, that the particular allegations made against particular defendants are in fact segregated in each suit and that Boyd's attempt to name all defendants in all of his suits is duplicative and redundant. Specifically, (1) all claims against Judge Moore are made in C.A. No. 09-7642 "J"(2) and no other case; (2) all claims against Judge Vance are made in C.A. No. 09-7643 "A"(1) and no other case; (3) all claims against Judge St. Pierre are made in C.A. No. 09-7645 "C"(5) and no other case; (4) all claims against United States Marshal's deputy Kelly Lasher are made in C.A. No. 09-7508 "R"(2) and no other case; (5) all claims against Diane Rushing are made in C.A. No. 09-7641 "I"(2) and no other case; (6) all claims made concerning the alleged failure of a deputy United States marshal or other prison official to transport Boyd to his sister's funeral are asserted in C.A. No. 09-7646 "I"(2) and no other case; (7) all claims concerning various conditions of Boyd's confinement at Nelson Coleman Correctional

Center against officials of that prison, including Warden John Nowak (identified by plaintiff as "Maj Nowack") and an unidentified medical director, are made in C.A. Nos. 09-7639 "I"(3) and 09-7647 "I"(5) and no other case.

## THE RECORD

In his original complaint, Boyd perfunctorily alleges that defendant Lasher authorizes "medical treatment for inmates in the Eastern District of Louisiana" and that she "cancel[led] petitioner's treatment for prostrate (sic) cancer." In the relief portion of his complaint, Boyd requests "Kelly Lasher to be ordered to authorize further treatment and to pay punitive damages in the amount of $30,000.00 (thirty thousand dollars) and any other award granted for pain and suffering by the Court." Record Doc. No. 1 (Complaint at ¶ IV and V).

In light of the paucity of factual allegations made in his original complaint, I provided Boyd with an opportunity to expand upon his allegations and ordered that his medical records for the period of his pre-trial incarceration be produced to me for review. Record Doc Nos. 4 and 5. In response to my first order, that plaintiff provide a written statement of the facts, documents and witnesses in support of his medical care claim against defendant Kelly Lasher, Boyd filed a written statement in which he alleged that "defendant denied further medical treatment for Prostrate (sic) Cancer and denial of possible skin Cancer treatment." Record Doc. No. 6 ("Plaintiff Comply with Order of

Court") at p. 1. He identified two witnesses, Dr. Perri Prellop who "will testify as to the defendant's action on denial of plaintiff's Cancer Treatment," and Keisha Charles, who "will testify as to the disapproval by defendants on plaintiff's medical treatments." Id.

In response to my second order, a certified copy of plaintiff's medical records was sent to me from the Nelson Coleman Correctional Center. Record Doc. No. 7. The medical records are replete with references to numerous examples of extensive treatment for plaintiff's cancer, including many instances in which treatment was expressly pre-approved by defendant Lasher. For example, the records begin with a notation on his "Initial Nursing Assessment" upon entrance into the jail on November 18, 2008, that Boyd had been diagnosed with prostate cancer prior to his incarceration, but had not yet begun treatment. The records further indicate that for the approximately four months that followed before his indictment in this court, medical personnel at the jail and at the Leonard J. Chabert Medical Center monitored his prostate cancer with frequent PSA ("prostate specific antigen") tests, gathered relevant pre-incarceration medical records, and formulated a plan for his treatment, including prescribed medication (e.g., Casodex), dietary supplements, a hormonal treatment referred to in the records as "ADT," and radiation therapy, referred to in the records as "XRT."

On March 23, 2009, at or near the time of his initial appearance on the criminal charges in this court, Magistrate Judge Moore issued an order that Boyd be given

treatment for his prostate cancer. Crim. No. 09-63 "R"(5), Record Doc. No. 13. Within three weeks, requests for pre-approval of medical services, including urology treatment at the Chabert Medical Center (April 7, 2009) and a regimen of 42 radiation therapy treatments by OncoLogics, Inc. at an estimated cost of $32,680.41 (April 14, 2009) were submitted to the United States Marshals Service and specifically approved. The record documenting approval of the radiation therapy on April 16, 2009, only two (2) days after it was requested, specifically notes that "USMS (United States Marshals Service) pays Medicare rates or less." The medical records for April and May 2009 also note pre-approval requests for and approvals of additional cancer treatment, including the prescription medication Casodex, a bone scan and bone injection, an abdominal and pelvic CT scan, the prescription injectable hormone Lupron, urology clinic followup consultations, prescription Flomax for urinary function and additional dietary supplements.

A Nelson Coleman Correctional Center "Medical Department Progress Note" dated June 9, 2009 indicates that Boyd is "undergoing radiation to prostate five days per week. Prostate cancer treated 5 times per week with radiation. Non-compliant with doctor advice – questionable educational level . . ." Various notations in the medical records during June 2009 confirm that Boyd's radiation treatments were continuing, including one dated June 23, 2009, indicating "7 treatments left." Three (3) separate

subsequent correctional center "Medical Department Progress Notes" (dated July 21, August 19 and December 1, 2009) indicate that Boyd's 42-treatment radiation regimen was completed in July 2009, but the records are clear that his cancer treatment continued. On July 8, 2009, Lasher specifically approved Dr. Durante's June 30, 2009 request for pre-approval of follow-up treatment after completion of the radiation treatments. The records establish that for the six months or more covered by the available records after completion of his radiation therapy, Boyd received follow-up urological and oncological examinations, at least two of which were specifically pre-approved by defendant Lasher (October 27, 2009 and November 6, 2009); adjustments to his prescription medications, including Flomax, and the cancer-fighting medication depo-provera; hormone injections; and frequent PSA checks, at least two of which indicated in November 2009 that his PSA level had dropped to within a normal range following completion of the radiation treatments. The medical records end in December 2009 with a prescription from Chabert Medical Center for another PSA check one or two weeks before his next clinic visit for a hormone shot three months in the future and a correctional center "Medical Department Progress Note" dated December 22, 2009 noting Boyd's "prostate cancer under treatment at this time."

The medical records include only a single instance during the entirety of Boyd's incarceration in which a request for pre-approval of treatment was "disapproved" by

defendant Lasher. On July 1, 2009, Dr. Durante submitted a "Request for Pre-Approval of Medical Services" for "urology follow-up at Chabert urology approx. cost $250." The record notes that Lasher disapproved this request on July 28, 2009. However, the records also indicate that <u>one</u> day before his July 1, 2009 pre-approval request, Dr. Durante on June 30, 2009 had submitted a similar, separate "Request for Pre-Approval of Medical Services" for "follow-up to radiation therapy . . . approx. cost $250," which Lasher <u>approved</u> on July 8, 2009. Moreover, the records establish that Boyd did in fact receive extensive follow-up care after his radiation therapy was completed, some of which was pre-approved in writing by Lasher. Thus, the single disapproval appears to have been based on a duplication of pre-approval requests for follow-up examinations and did not affect Boyd's radiation therapy or his after-care.

## <u>ANALYSIS</u>

I.    <u>STANDARDS OF REVIEW</u>

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); <u>Martin v. Scott</u>, 156 F.3d 578, 579-80 (5th Cir. 1998). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim. 28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992). An in forma pauperis complaint which is legally frivolous, fails to state a claim or seeks

monetary relief against a defendant who is immune from such relief may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2).

In screening a pro se prisoner's in forma pauperis complaint, the court may consider and rely upon documents, as long as they are properly identified, authentic and reliable. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). "'Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

In this case, plaintiff's Section 1983 complaint must be dismissed either under 28 U.S.C. § 1915(e) as frivolous because it lacks an arguable basis in law, or under Rule 12(b)(6) because it fails to state a cognizable Section 1983 claim under the broadest reading,[1] or because parts of it are duplicative.

II.    BIVENS CLAIM

Viewed broadly, Boyd's complaint may be an attempt to allege a claim concerning his medical care against both Deputy Marshal Lasher and her employer, the United States Marshals Service.  42 U.S.C. § 1983 permits civil actions for damages based upon

---

[1]Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

alleged violations of constitutional rights only against persons acting under color of state law, not actions against the United States, its agents or agencies. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 396, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). Thus, to whatever extent, if any, plaintiff seeks to assert a Section 1983 claim against the United States or one of its agencies, he fails to state a claim upon which relief can be granted.

Of course, a petitioner may maintain a similar kind of claim against a federal employee accused of violating his federal constitutional rights. Such a claim is now generally referred to as a Bivens action. See Witherspoon v. White, 111 F.3d 399, 400 n.1 (5th Cir. 1997) (citing Stephenson v. Reno, 28 F.3d 26, 26 n.1 (5th Cir. 1994)). A Bivens claim, however, is available only against government officers in their individual capacities in order to deter future civil rights violations by such individuals. Williamson v. U.S. Dept. of Agriculture, 815 F.2d 368, 380 (5th Cir. 1987). The Supreme Court has held that there can be no Bivens cause of action against the United States government, a federal agency, like the United States Marshals Service, or government officers in their official capacities, like individual deputy marshals, because the deterrent effect on the individual would be lost. FDIC v. Meyer, 510 U.S. 471, 484-486 (1994).

Thus, no Bivens claim can be stated against the Marshals Service or any of its officers, including Deputy Marshal Lasher, since the allegations relate to actions that

could only be taken in a deputy marshal's official capacity. Moreover, even accepting all of plaintiff's allegations as true, for the reasons stated below, I can conceive of no constitutional violation stated in this complaint. Without a constitutional violation, neither a <u>Bivens</u> claim nor a Section 1983 claim can be stated.

III.   <u>MEDICAL CARE</u>

Boyd specifically alleges that his cancer treatment was cancelled by defendant. Viewed broadly, his complaint may be construed as a claim that his medical care while incarcerated has been constitutionally deficient. Boyd has been a pretrial detainee awaiting trial in this court during the time period about which he complains. Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. <u>Bell v. Wolfish</u>, 441 U.S. 520, 539 (1979); <u>Cupit v. Jones</u>, 835 F.2d 82, 85 (5th Cir. 1987); <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1186 (5th Cir. 1990), <u>abrogated on other grounds as recognized in Martin v. Thomas</u>, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, as previously stated, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Tamez v. Manthey, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009); Hare, 74 F.3d at 650.

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and

wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Estelle, 429 U.S. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.  The Farmer definition applies to Eighth Amendment medical claims.  Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment with regard to medical care.  If the court finds that one of the components of the test is not met, it need not address the other component.  Davis, 157 F.3d at 1005.

"First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, No. 09-40223, 2009 WL 4279851, at *2 (5th Cir. Dec. 1, 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 2009 WL 4324808, at *4 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, No. 08-40685, 2009 WL 3738532, at *3 (5th Cir. Nov. 10, 2009) (quoting Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added). "'Subjective recklessness,'" as used in the criminal law, is the

appropriate test for deliberate indifference." <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's complaint as expanded upon in his written statement of additional facts, establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue. <u>See</u> <u>Tamez</u>, 2009 WL 4324808, at *4 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies and Boyd must allege facts sufficient to establish that defendant Lasher knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff wholly fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard.

Boyd's written allegations, as supplemented in writing and when viewed against the backdrop of his verified medical records, negate any inference that defendant Lasher acted with deliberate indifference to his serious medical needs. Certainly, cancer presents a serious medical need posing a substantial risk of serious harm if untreated. <u>See</u> <u>Caldwell v. District of Columbia</u>, 201 F.Supp. 27 (D.D.C. 2001); <u>Wash v. Gilless</u>, 215 F.3d 1328, 2000 WL 659225 (6th Cir. 2000); <u>Goosman v. Foti</u>, 2000 WL 423902 (E.D. La. 2000).

Even concluding, however, that plaintiff's cancer diagnosis presents a serious medical need for constitutional purposes, Boyd has alleged facts, confirmed by the verified medical records, that negate any inference of deliberate indifference by defendant Lasher or anyone else. The record establishes that plaintiff has received fully adequate medical care for his cancer condition while incarcerated awaiting trial.

The medical records establish that Boyd was provided with extensive (and apparently successful) treatment for his cancer, including an expensive 42-session radiation treatment, special anti-cancer medications, hormone treatment, frequent PSA testing, specialized follow-up care, a CT scan, a bone scan and dietary supplements. His medical care has been more than constitutionally adequate. See Padichit v. Unknown Cook County Officials, 2006 WL 1897518, *1-2 (S.D. Ill. July 11, 2006) (no deliberate indifference where cataract surgery was provided within six months); Baker v. Brantley County, 832 F. Supp. 346, 352 (S.D. Ga. 1993), aff'd, 19 F.3d 37 (11th Cir. 1994) (no deliberate indifference to serious medical need of pneumonia when plaintiff was examined twice by emergency medical technician and twice by physician, and plaintiff received prescription medication); Pierre v. Gruler, No. 3:06-cv-45-J-32JRK, 2009 WL 383352, at *10 (M.D. Fla. Feb. 16, 2009) (jail physician was not deliberately indifferent to plaintiff's shoulder injury resulting from fall to the ground after being shot with a taser gun, when plaintiff "received extensive and reasonable medical treatment by" physician

and other medical providers at the jail and was "promptly referred" to an orthopedic surgeon.).

It appears that from time to time an appointment may have been rescheduled or delayed and that on one occasion Lasher disapproved a single request for pre-approval of follow-up care. Although Boyd has expressed dissatisfaction with his treatment in this regard, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted). No such showing has been made on the current record.

Mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. No such showing can be made in this case in light of the extensive medical care Boyd has received during his pre-trial incarceration.

Contentions like Boyd's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Rowe v. Norris, 198 Fed. Appx. 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendant Lasher (or anyone else) was deliberately indifferent to his serious medical needs. For all of the foregoing reasons, plaintiff's complaints in this case about his

medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

IV.    <u>DUPLICATIVE CLAIMS</u>

A prisoner's in forma pauperis complaint must be dismissed if it is found to be malicious. 28 U.S.C. § 1915(e)(2)(B)(i).  Duplicative and repetitive lawsuits are malicious for purposes of Section 1915.  <u>Potts v. Texas</u>, No. 08-41177, 2009 WL 3806073, at *1 (5th Cir. Nov. 13, 2009)  (citing <u>Pittman v. Moore</u>, 980 F.2d 994, 994-95 (5th Cir. 1993); <u>Bailey v. Johnson</u>, 846 F.2d 1019, 1021 (5th Cir. 1988)); <u>McBarron v. Federal Bureau of Prisons</u>, 332 Fed. Appx. 961, 2009 WL 1659221, at *1 (5th Cir. June 15, 2009).  A prisoner's in forma pauperis complaint which is frivolous, malicious or fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, the remainder of plaintiff's complaint – to whatever extent, if any, it names defendants other than Deputy Marshal Lasher, without providing any allegations whatsoever against those other defendants – must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), because it is in part malicious and repetitive of the same claims asserted in other cases filed in this court and because the remainder of the complaint makes no allegations against any defendant other than Deputy Marshal Lasher, and therefore fails to state a claim upon which relief can be granted under Rule 12(b)(6).

Specifically, plaintiff's identification in the caption of his complaint in this case of defendants Moore, Nowack, Rushing, Vance, St. Pierre and various "Doe" defendants is apparently duplicative of the same claims he has asserted in C.A. Nos. C.A. Nos. 09-7642 "J"(2), 09-7639 "I"(3), 09-7641"I"(2), 09-7643 "A"(1), 09-7645 "C"(5), 09-7646 "I"(2) and 09-7647 "I"(5), all of which have either been dismissed or have pending a report and recommendation of dismissal, after having been fully considered in this court.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim on which relief may be granted and/or as duplicative and malicious under 28 U.S.C. § 1915(e)(2).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this _____9th_____ day of March, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.